UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/21/17

 KELLY BLOUNT,                                 :
                                                       :
                             Plaintiff,        :
                                                       :
             -against-                         :                    1:16-cv-4505-GHW
                                                       :
                                                       :              OPINION AND ORDER
MARK MOCCIA; WILLIAM PUSKAS; JASON    :
KORPOLINSKI; STEWART A. LIEBER;       :
MICHAEL GEE; ROBERT REGNIER; JAVIER   :
VALENTIN; LIEUTENANT BHOJ; OFFICER    :
O'ROURKE; JESSICA GROPPE; ROBERT T.   :
JOHNSON; SEAN MARYNES; THE CITY OF    :
NEW YORK,                                      :
                                                       :
                             Defendants.  :
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

        Plaintiff Kelly Blount was arrested and indicted in 2012 for robbery and other related crimes.

Three years later, the charges against him were dismissed.  Plaintiff filed this action against several

members of the New York City Police Department (the "NYPD Defendants"), members of the

Bronx District Attorney's Office (the "D.A. Defendants"), and the City of New York, alleging

violations of his constitutional rights in connection with the prosecution of the criminal charges

against him.  In his second amended complaint, Plaintiff expressly pleads a claim for malicious

prosecution under 42 U.S.C. § 1983 ("section 1983").  The Court also construes the second

amended complaint to suggest a due process claim under section 1983, *Monell* liability, and claims for

intentional infliction of emotional distress and *respondeat superior* liability under New York state law.

        Defendants moved to dismiss the second amended complaint for failure to state a claim

under Rule 12(b)(6).  Because the D.A. Defendants are entitled to absolute immunity, the claims

against them are dismissed.  Plaintiff's federal claims against the other defendants are also dismissed,

and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Defendants' motion to dismiss is therefore GRANTED.

I.     **BACKGROUND**[1]

   A.  **The July 31, 2012 Armed Robbery**

Shortly after midnight in the morning hours of August 1, 2012, Plaintiff's brother, Jesse Blount, was arrested in connection with the armed robbery of two victims that had occurred just hours before on July 31, 2012.  Plaintiff's Opp. to Mot. to Dismiss, ECF No. 66 ("Pl.'s Opp."), Ex. 1.[2]  Jesse was carrying Plaintiff's identification at the time.  Pl.'s Supp. Opp. to Mot. to Dismiss, ECF No. 78 ("Pl.'s Supp. Opp.") at 4.[3]  Jesse was taken to the 47th Precinct, where Officer Jason Korpolinski was assigned to process his arrest.  Pl.'s Opp., Ex. 1.

Both robbery victims positively identified Jesse during a show-up identification.  *Id.*  Several pieces of jewelry that were identified as stolen items by one of the victims were recovered from the front yard of 3327 Barker Avenue—the same area where Jesse's arresting officer first saw him.  *Id.*  A semi-automatic handgun was also recovered from nearby.  *Id.*  According to the report prepared by Captain Stewart A. Lieber, the duty captain responsible for investigating the robbery, the following NYPD members "were present":  Sergeants Gee, Quiles, O'Rourke, and Laliberte; Detectives Regnier, Higgins, and Cacce; Lieutenants Bhoj and Valentin; and Officers Martinez and Moccia.  *Id.*  Captain Lieber recommended that the matter be "followed up by the 47th Precinct

---

[1] Unless otherwise noted, the facts are taken from the second amended complaint or Plaintiff's opposition to Defendant's motion, and are accepted as true for the purposes of this motion.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[3] Because Plaintiff's submissions were not filed with clearly labeled page numbers, the Court cites to the page numbers indicated on the ECF docket notation when citing to the second amended complaint and to Plaintiff's opposition papers.  *See Walker*, 717 F.3d at 122 n.1 ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

Detective Squad." *Id.*

That same day, Detective Mark Moccia of the 47th Precinct Detective Squad requested that a "Deputy Commissioner's Subpoena" be issued to T-Mobile USA, Inc. in connection with a stolen cell phone. Pl.'s Opp., Ex. 2. The request noted that one of the robbery victim's cell phone was stolen on July 31, 2012, and that the cell phone records were "required to determine if the cell phone was used after it was stolen and to aid in locating the perpetrator." *Id.* The request for the subpoena was approved weeks later by the Commanding Officer of the 47th Precinct Detective Squad. *Id.*

### B.  Plaintiff's Arrest and Indictment

On August 8, 2012, at approximately 6:00 a.m., Detectives William Puskas and Mark Moccia,[4] accompanied by other plain-clothed detectives, knocked and banged on Plaintiff's windows and doors. Second Amended Complaint, ECF No. 41 ("SAC") at 3. When Plaintiff answered the door, Detectives Puskas and Moccia knocked him to the floor and "[s]eized" him "because of an alleged robbery that occurred the night of July 31, 2012" (the "robbery"). *Id.* A little over an hour later, Plaintiff was transported to the "Detective Bureau" located at 1086 Simpson Street in the Bronx. *Id.* Plaintiff was neither interrogated nor asked to provide any handwritten or oral statements in connection with the robbery. *Id.*

The following day, Plaintiff was arraigned in the Bronx County Criminal Court, and an "[e]xcessive [b]ail" was set. SAC at 4. Plaintiff was then taken to the Vernon C. Bain Center ("V.C.B.C.") in the Bronx, where he was detained for six days. *Id.*

On August 14, 2012, at approximately 6:00 p.m., Plaintiff testified before a grand jury and was questioned by Assistant District Attorney ("ADA") Sean Marynes about the robbery. *Id.* The "complainant witness did not implicate Plaintiff in the robbery." Pl.'s Supp. Opp. at 4. That same

---

[4] Defendant Moccia is identified in Captain Lieber's August 1, 2012 report as an officer. Pl.'s Opp., Ex. 1. Plaintiff's second amended complaint, however, identifies him as a detective. SAC at 2.

evening, Plaintiff was released home.  SAC at 4.  At some point between August 30, 2012 and

September 10, 2012, Plaintiff was indicted on various robbery and other related charges.  *Id.*[5]

Among other things, the indictment charged Plaintiff and his brother with committing various

counts of robbery by "acting in concert with each other and another, and each aiding the others

actually present."  Declaration of Melissa Kim in Supp. of Def.'s Mot. to Dismiss, ECF No. 59

("Kim Decl."), Ex. B.[6]

### C.  Plaintiff's Criminal Proceedings

Plaintiff was initially represented by attorney David Barnhard in connection with the

criminal charges.  SAC at 4.  At some point, Plaintiff's brother provided "Exculpatory Materials" to

Mr. Barnhard, after the receipt of which Mr. Barnhard withdrew as counsel to Plaintiff out of

concern that he would be called upon as a potential witness.  *Id.*[7]  Attorney Victor Schurr then

assumed Plaintiff's representation.  *Id.*  Mr. Barnhard provided Mr. Schurr with Plaintiff's file,

including the "BRADT [sic] Materials."  *Id.*

On March 6, 2014, ADA Jessica Groppe issued a subpoena duces tecum to Mr. Schurr,

commanding that Mr. Schurr produce "[a]udio calls, letters and notes from Jesse Blount to former

attorney for Kelly Blount (David Barnhard) regarding Indictment 2726/2012 (People v. Jesse Blount

---

[5] The Court takes judicial notice of the grand jury indictment—attached as an exhibit to Defendants' motion—as a public record.  *See Ives Lab., Inc. v. Darby Drug Co.*, 638 F.2d 538, 544 n.8 (2d Cir. 1981), *rev'd on other grounds sub nom. Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844 (1982) (taking judicial notice of several indictments simply to establish that such indictments had in fact been returned, but "express[ing] no opinion as to the guilt or innocence of those indicted"); *Bryant v. Rourke*, No. 15-cv-5564, 2017 WL 1318545, at *3 (E.D.N.Y. Feb. 8, 2017) (magistrate judge) ("[I]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[,] . . . including . . . indictments . . . ."); *Bond v. City of New York*, No. 14-cv-2431, 2015 WL 5719706, at *2 (E.D.N.Y. Sept. 28, 2015) (taking judicial notice of "fact of the grand jury indictment"); *Obilo v. City Univ. of N.Y.*, No. 10-cv-5118, 2003 WL 1809471, at *4-5 (E.D.N.Y. Feb. 28, 2003) (noting that it is "well established" that a court may take judicial notice of a grand jury indictment).  In taking judicial notice of the indictment, the Court expresses no opinion as to the innocence or guilt of the indicted parties.

[6] The copy of the indictment filed by Defendants redacts Plaintiff's co-defendant's name.  However, it is clear from Plaintiff's submissions that he was indicted with his brother, Jesse Blount.  *See* Pl.'s Opp., Ex. 3.

[7] In the second amended complaint, Plaintiff provides very little information about the alleged exculpatory materials to which he refers.  In his supplemental opposition, Plaintiff generally references "statements" given by his brother to "exonerate" Plaintiff.  Pl.'s Supp. Opp. at 5.

& Kelly Blount)" on March 7, 2014.  Pl.'s Opp., Ex. 3.  Mr. Schurr provided the "Brady Materials" to ADA Groppe.  SAC at 4.  Plaintiff alleges that, despite ADA Groppe's receipt of the exculpatory materials, she "never investigated correctly or stated any of these materials to the Judge."  *Id.*  ADA Groppe then "stepped off" Plaintiff's case.  *Id.*

### D.  Plaintiff's Charges Are Dismissed

In a letter dated January 27, 2015, Plaintiff's brother Jesse acknowledged that he decided to "be a big man" and "to tell the truth about July 31st."  Pl.'s Opp., Ex. 4.[8]  The letter describes the robbery and states that, after stealing jewelry and a cell phone from his victims, Jesse ran to Plaintiff's house "and asked him for car fair [sic] so [he] could pawn the jewlery [sic]."  *Id.*  The letter affirms that Plaintiff "never knew what happend [sic]."

On August 7, 2015, after "an extensive 1,072 days," the charges against Plaintiff were dismissed.  SAC at 3.[9]

Plaintiff alleges that Defendants maliciously prosecuted him by arresting him while knowing that the real suspect was already in custody, suppressing exculpatory evidence, and violating New York's speedy trial laws.  SAC at 4.  Plaintiff claims that, as a result, he has endured "cruel and unusual pain, mental anguish, emotional distress, a divorce, and pain to [his] daughter."  SAC at 5. Plaintiff seeks damages in the amount of fourteen million dollars.  *Id.*

### E.  Procedural History

Plaintiff filed this action *pro se* on June 15, 2016, naming as defendants various members of the New York City Police Department ("NYPD"), former Bronx County District Attorney Robert

---

[8] It appears that the copy of the letter attached to Plaintiff's opposition is not a complete copy.  Only the first page of the letter is attached, and the bottom portion of the letter is missing.

[9] The reason for the dismissal of the charges is unclear.  In Plaintiff's second amended complaint, he alleges "All prosecutors dragging the case out for an extensive 1,072 days, which resulted with "ALL CHARGES BEING DISMISSED IN COMPLAINANTS FAVOR."  SAC at 4.  Defendants assert that the charges were dismissed on speedy trial grounds.  Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 57 ("Def.'s Mem.") at 2 (citing SAC at 3-4). In his opposition, Plaintiff states, "the defendants alleged that it was dismissed on speedy trial issues, but the plaintiff differ [sic] with them."  Pl.'s Opp. at 16.

T. Johnson, ADA Sean Marynes, the Bronx County 47th Precinct, and the City of New York.  ECF No. 1.  The case was initially assigned to Chief Judge McMahon.  Plaintiff was granted leave to proceed *in forma pauperis* on October 24, 2016.  ECF No. 6.

On November 10, 2016, Chief Judge McMahon issued an order *sua sponte* granting Plaintiff leave to amend his complaint to address the timeliness of his claims arising out of his August 2012 arrest.  ECF No. 7.  Chief Judge McMahon also granted Plaintiff leave to plead whether *all* of the charges brought against him in connection with his arrest were dismissed.  *Id.*  On December 20, 2016, Plaintiff filed an amended complaint, naming in large part the same defendants as the original complaint.  ECF No. 9.

On January 31, 2017, the case was reassigned to this Court.  On February 1, 2017, the Court dismissed as time-barred Plaintiff's claims for false arrest, excessive force, and false imprisonment, noting that Plaintiff failed to address the timeliness of these claims in his amended complaint.  ECF No. 12.  On April 5, 2017, the Court granted Plaintiff leave to file a second amended complaint, which Plaintiff filed on April 17, 2017.  ECF Nos. 39, 41.  The second amended complaint again names as defendants various NYPD members, Bronx County District Attorney defendants, and the City of New York.  ECF No. 41.

Defendants filed a motion to dismiss the second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on June 16, 2017.  ECF No. 56.[10]  Plaintiff filed his opposition to Defendants' motion on July 17, 2017.  ECF No. 66.  Defendants filed a reply on August 22, 2017, and Plaintiff filed a supplemental opposition on September 12, 2017.  ECF Nos.

---

[10] The Court granted Defendant Javier Valentin's request to join the motion to dismiss on September 22, 2017.  ECF No. 80.  Defendants note in their motion papers that Defendants Valentin, Groppe, and O'Rourke are not properly defendants in this case because they have not been served with process.  Pl.'s Mem. at 1 n.2; Pl.'s Reply at 1 n.2.  The Court notes that on June 20, 2017, after Defendants filed their motion to dismiss, Defendants acknowledged that Groppe had been served.  ECF No. 60.  On June 21, 2017, the Court noted in its order that it understood O'Rourke to also accept that he had been served with process.  ECF No. 61.  By proof of service filed on August 14, 2017, it appears that Valentin has also been served.  ECF No. 75.  Accordingly, the Court is satisfied that all named defendants have been served and are properly defendants in this action.

74, 78.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not

incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). Finally, the Court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III.   DISCUSSION

While Plaintiff specifically frames his allegations as bringing a claim under section 1983 for malicious prosecution, he also asserts that Defendants violated his constitutional rights secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. SAC at 4.[11] Defendants move to

---

[11] As an initial matter, Plaintiff fails to state a claim under the Fifth Amendment. "The Fifth Amendment's Due Process Clause protects citizens against only federal government actors," *Mitchell v. Home*, 377 F. Supp. 2d 361, 372 (S.D.N.Y.

dismiss only Plaintiff's malicious prosecution claim.  However, to the extent that Plaintiff's second amended complaint can be read to raise other claims, the Court also addresses those claims.

### A.  Claims Against the District Attorney Defendants

Plaintiff claims that former Bronx County D.A. Johnson and ADAs Marynes and Groppe (the "D.A. Defendants") violated his constitutional rights by (1) delaying his prosecution in violation of his speedy trial rights under New York law, (2) withholding exculpatory evidence, and (3) proceeding with his prosecution despite the exculpatory evidence.  To the extent Plaintiff seeks damages from these defendants in their official capacities, the Eleventh Amendment bars Plaintiff's claims.  *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see Hafer v. Melo*, 502 U.S. 21, 30 (1991) ("[T]he Eleventh Amendment bars suits in federal courts by private parties seeking to impose a liability which must be paid from public funds in the state treasury." (internal quotation marks and citation omitted)).

To the extent that Plaintiff seeks damages from the D.A. Defendants in their individual capacities, these defendants enjoy absolute immunity.  "Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'"  *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'"  *Id.* (quoting *Imbler*, 424

---

2005) (citing *Dusenbery v. United States,* 534 U.S. 161, 167 (2002)), and because Plaintiff alleges deprivations only by state government officials, his claims "arise solely from the Fourteenth Amendment due process clause."  *Id.* at 373 (citing *Dusenbery*, 534 U.S. at 167).  Thus, insofar as Plaintiff's section 1983 claim is based on a violation of his constitutional rights under the Fifth Amendment, that claim is dismissed.

Additionally, to the extent that Plaintiff's second amended complaint attempts to resurrect claims for false arrest, false imprisonment, and excessive force, those claims were dismissed with prejudice as time-barred by the Court's February 1, 2017 order, ECF No. 12.

U.S. at 431 n.33).

"To determine whether an official enjoys absolute immunity," courts are to "take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Giraldo*, 694 F.3d at 165 (quoting *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995) (internal quotation marks omitted)). "These functions include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." *Simon*, 727 F.3d at 171 (citing *Imbler*, 424 U.S. at 431 n.33). More specifically, the "Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.'" *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 424 U.S. at 431 n.33).

The "relevant question . . . is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Id.* at 166. "[T]he 'functional' test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent." *Hill*, 45 F.3d at 662. As a result, if the challenged acts are "reasonably within the functions of a prosecutor," then "absolute immunity applies to protect the prosecutor even in the fact of a complaint's allegations of malicious or corrupt intent behind the acts." *Giraldo*, 694 F.3d at 166.

On the other hand, a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial

proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. "Although all investigative activity could be considered in some sense to be 'prepar[ation] for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley*, 509 U.S. at 273). "[A]ctions taken as an investigator enjoy only qualified immunity." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). "The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo*, 694 F.3d at 166.

Here, all of the alleged conduct of former D.A. Johnson and ADAs Marynes and Groppe falls "within the functions of a prosecutor" and is entitled to absolute immunity. *Giraldo*, 694 F.3d at 166. Plaintiff's second amended complaint alleges that ADA Groppe issued a subpoena in March 2014, as a result of which she received "[B]rady materials" which she "never elicited" "before Judge Lieb" in the Bronx County Criminal Court. SAC at 4. Plaintiff's allegations with respect to ADA Marynes are thinner, indicating that ADA Marynes questioned Plaintiff during his grand jury testimony, but alleging no further specific acts by that defendant. SAC at 4. In his opposition, Plaintiff generally asserts that "[t]he Bronx County District Attorney/Assistant District Attorney withheld exculpatory evidence from the Grand Jury, suppressed and concealed evidence and conspired with one another to obtain a Grand Jury indictment, permitted the presentation of false and misleading testimony to the Grand Jury, and took no action to correct the same." Pl.'s Opp. at 19.

The Court need not determine whether Plaintiff sufficiently alleges constitutional violations by each of the D.A. Defendants. This is because all of the alleged acts are directly tied to the D.A. Defendants' prosecutorial functions, particularly to the presentation of the case to the grand jury and

the court, and are thus cloaked in absolute immunity.  *See Simon*, 727 F.3d at 171; *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 333 (S.D.N.Y. 2017) (finding that assistant district attorney's "subornation of perjury before, and withholding of exculpatory evidence from, the grand jury" were shielded by absolute immunity).

Plaintiff argues in his opposition that the D.A. Defendants are entitled only to qualified, not absolute, immunity with respect to their "investigation by the issuance of Grand Jury Subpoena." Pl.'s Opp. at 17.  According to Plaintiff, under the circumstances of his case, "the Bronx County District Attorney officer was essentially engaged in police activity well outside his quasi-judicial capacity."  *Id.* at 18.  Plaintiff pleads no other facts regarding a subpoena issued for the purpose of securing grand jury testimony.  Rather, the only subpoena otherwise described in Plaintiff's pleadings and opposition papers is the March 2014 subpoena issued by ADA Groppe to Plaintiff's attorney.  Pl.'s Opp., Ex. 3.  That subpoena was issued approximately eighteen months after the grand jury had convened and returned an indictment and is more appropriately characterized as a "preparatory step[ ]" taken by ADA Groppe "to be an effective advocate of a case already assembled."  *Smith*, 147 F.3d at 94.  In any event, the issuance of either subpoena falls well within the bounds of the D.A. Defendants' quasi-judicial prosecutorial role—a role which includes "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and *issuing subpoenas*."  *Zanfardino*, 230 F. Supp. 3d at 332 (emphasis added) (quoting *Simon*, 727 F.3d at 171).  Plaintiff's claims against the D.A. Defendants related to their decision to prosecute him and any alleged withholding of exculpatory evidence are therefore dismissed with prejudice.

With respect to Plaintiff's speedy trial claim, Plaintiff expressly alleges a violation of his speedy trial rights under N.Y. C.P.L. § 30.30.  Nonetheless, his submissions may also be read to raise a claim under the Sixth Amendment.  *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . .").  Violations of this constitutional right can be

12

redressed through civil actions brought under section 1983. *See, e.g., Varrichio v. County of Nassau*, 702 F. Supp. 2d 40, 51 (E.D.N.Y. 2010) (permitting section 1983 claim for deprivation of speedy trial right to proceed where plaintiff alleged a "two-year detention without being tried for the contempt charges for which he was arrested"); *Brooks v. Panas*, No. 14-cv-4835, 2016 WL 614684, at *4 (E.D.N.Y. Feb. 16, 2016) (reading allegations to raise a Sixth Amendment claim based on the plaintiff's deprivation of his right to a speedy trial).

Plaintiff's allegations with respect to a speedy trial claim, however, amount to nothing more than legal conclusions. He alleges that former D.A. Johnson "disregarded" his "30.30 speedy trial time," SAC at 4, but fails to allege any facts as to how the D.A. Defendants caused or contributed to the delay in his criminal proceedings. It is well settled that a "naked assertion" without "further factual enhancement" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Moreover, as just discussed, the steps taken by the D.A. Defendants to prosecute Plaintiff's case are entitled to absolute immunity to the extent they fall within the traditional prosecutorial functions. Plaintiff's Sixth Amendment claim is thus also dismissed with prejudice.

## B. Claims Against the NYPD Defendants

### 1. Malicious Prosecution

"To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). To state a claim for malicious prosecution under New York law, a plaintiff must allege (1) that the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Id.*; *Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007) (citing *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). To plead a constitutionally cognizable deprivation of liberty, a plaintiff must allege that there was "a seizure or other perversion

of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks omitted).  That seizure must be post-arraignment.  *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

Here, Plaintiff clearly alleges a deprivation of liberty—he states that he was arrested, arraigned, and detained for six days.  *See United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (holding that, under standard Fourth Amendment analysis, a person is considered "seized" if he is unable to leave an officer's presence without permission).  The legal sufficiency of his malicious prosecution claim therefore turns on whether he has stated a claim under New York law.

### a.   Detectives Puskas and Moccia

Defendants argue that Plaintiff insufficiently pleads the commencement or continuation of criminal proceedings and that his allegations do not overcome the presumption of probable cause generated by Plaintiff's indictment.  While Plaintiff does allege sufficient facts to suggest that Detectives Puskas and Moccia commenced criminal proceedings against him and that those proceedings terminated in his favor, the Court agrees that Plaintiff's allegations with respect to probable cause cannot withstand a motion to dismiss.  Plaintiff also insufficiently pleads malice.

### i.   Commencement or Continuation of Criminal Proceedings

Defendants argue that Plaintiff fails to allege the first element of his claim—the commencement or continuation of a criminal proceeding—because he alleges that Detectives Puskas and Moccia only initiated Plaintiff's *arrest*.  Construing Plaintiff's submissions liberally, however, the Court concludes that Plaintiff sufficiently pleads the involvement of these defendants in the commencement of criminal proceedings against him.

In his second amended complaint, Plaintiff alleges that Detectives Puskas and Moccia arrived at Plaintiff's home and arrested him on August 8, 2012.  SAC at 3.  Although the second amended complaint states that "these defendants" did not interrogate Plaintiff or otherwise take a

statement from him at the "Detective Bureau" after his arrest, *id.*, Plaintiff's opposition asserts that "[s]everal police officers, Detectives, and other officials came to plaintiff [sic] home, seized him, removed him from his residents [sic], falsely arrested him and accused him of criminal activities . . . *and then falsely initiated criminal charges against him*," Pl.'s Opp. at 16 (emphasis added).  Drawing all reasonable inferences in Plaintiff's favor, the Court construes these allegations to plausibly suggest that Detectives Puskas and Moccia were involved in the filing of a criminal complaint, and thus commenced criminal proceedings against him.  *See, e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (concluding that state troopers "commenced a criminal proceeding" against the plaintiff "by formally charging [him] with violating the VIN statute and having him arraigned before the town justice"); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) ("A police officer may initiate criminal proceedings by bringing charges and having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (finding that a defendant "initiated a prosecution against [the] plaintiff by filing charges against her in a felony complaint").

### ii.    Termination in Plaintiff's Favor

Under New York law, "any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action."  *Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (Ct. App. 2000)).  "New York law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence.  Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence."  *Genovese v. County of Suffolk*, 128 F. Supp. 3d 661, 671 (E.D.N.Y. 2015); *Cantalino v. Danner,* 96 N.Y.2d 391, 396 (Ct. App.

2001) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.").

Here, Plaintiff pleads, and Defendants do not contest, that the criminal proceedings against him were terminated in his favor.  Plaintiff alleges that the result of his prosecution was "ALL CHARGES BEING DISMISSED IN COMPLAINANTS FAVOR."  SAC at 4.[12]  In his opposition, he also alleges that his brother's signed "confession" demonstrated that Plaintiff "had nothing whatsoever to do with the July 31, 2012 robbery, all charges was dismiss [sic]."  Pl.'s Opp. at 2.  Plaintiff further states that "on August 7, 2015, all charges against plaintiff were dismissed and plaintiff was found once again not to be responsible for the alleged incident in question."  *Id.* at 14.  For purposes of this motion, the Court is satisfied that Plaintiff sufficiently pleads that the criminal charges were dismissed in his favor.

### iii.    Probable Cause

"[T]he existence of probable cause constitutes a complete defense to a claim of malicious prosecution in New York."  *Hicks v. City of New York*, 232 F. Supp. 3d 480, 492 (S.D.N.Y. 2017) (alteration in original) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).  A grand jury indictment "creates a presumption of probable cause that can *only* be overcome by evidence that the indictment 'was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.'"  *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (emphasis added) (quoting *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000)).  That is, a plaintiff may overcome the presumption of probable cause "only by evidence establishing that the police [defendants] have not made a complete and full statement of the facts either to the Grand

---

[12] As noted earlier, Defendants state in their moving papers that the charges against Plaintiff were dismissed on speedy trial grounds.  Def.'s Mem. at 2.  Although Plaintiff does not agree that the charges were dismissed on speedy trial grounds, such a dismissal would be a dismissal in his favor for purposes of a malicious prosecution claim.  *See Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195-96 (Ct. App. 2000) (holding that a dismissal based on a violation of the right to a speedy trial under CPL 30.30 constitutes "termination of the proceeding in favor of the accused").

Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82-83 (Ct. App. 1983)). Therefore, to rebut a presumption of probable cause at the pleading stage, a plaintiff must plead facts that plausibly allege the existence of fraud, perjury, suppression of evidence, or bad faith on the part of the police defendants. *Hicks*, 232 F. Supp. 3d at 492. "'[M]ere conjecture and surmise' are insufficient to rebut the presumption." *Id.* (quoting *Savino*, 331 F.3d at 73).

Here, Plaintiff acknowledges in his second amended complaint that he was indicted for robbery and other related offenses. Thus the presumption of probable cause applies. Defendants argue that Plaintiff's allegations do not overcome that presumption, and the Court agrees.

Plaintiff alleges that Detectives Puskas and Moccia arrested him despite having the true guilty party in custody and "without a warrant or probable cause." Pl.'s Opp. at 4. He does not allege that the detectives failed to provide exculpatory evidence to the District Attorney's office. In fact, Plaintiff alleges that the District Attorney's office had the exculpatory materials when it "still seeked [sic] to have charges brought against" him. Pl.'s Opp. at 14. Nor do the allegations suggest that the detectives fabricated or suppressed evidence in their processing of Plaintiff's arrest and in the filing of charges against him. Therefore, Plaintiff's pleadings cannot be read to allege that the indictment was procured by fraud, perjury, or the suppression of evidence on the part of the detectives. *Cf. Shabazz*, 201 F. Supp. 3d at 392 (allegation that the indictment was procured by evidence fabricated by the defendant and forwarded to the prosecution was sufficient to overcome the presumption of probable cause at the pleading stage); *Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (finding complaint sufficient when it alleged facts that raised the possibility that the defendant lied about the circumstances of a search in order to secure the plaintiff's indictment).

To the extent that the complaint can be read to allege bad faith, it does so insufficiently.

While "[b]ad faith may be shown 'through evidence that police witnesses have not made a complete and full statement of facts,'" *Hicks*, 232 F. Supp. 3d at 492 (quoting *Newton v. City of New York*, 640 F. Supp. 2d 426, 442 (S.D.N.Y. 2009)), "police officers act in bad faith only when they fail to disclose evidence that would conclusively establish the plaintiff's innocence or negate the possibility that [the] plaintiff had committed the crime," *id.* (quoting *Stukes v. City of New York*, No. 13-cv-6166, 2015 WL 1246542, at *5 (E.D.N.Y. Mar. 17, 2015)). Here, Plaintiff asserts that Detectives Puskas and Moccia arrested him and filed charges against him knowing that Jesse Blount was already in custody. However, Jesse's apprehension would not have "conclusively" established Plaintiff's innocence. The indictment charged Plaintiff and his co-defendant with various robbery and other related crimes that they allegedly committed by "acting in concert with each other and another, and each aiding the others actually present." Def.'s Mem., Ex. B. Therefore, the fact that the detectives had one suspect in custody did not "conclusively establish" Plaintiff's "innocence or negate the possibility that [P]laintiff had committed the crime[s]." *Hicks*, 232 F. Supp. 3d at 492; *see Bonds v. City of New York*, No. 12-cv-1772, 2014 WL 2440542, at *8 (E.D.N.Y. May 30, 2014) (finding that allegations that the plaintiff did not match a witness's description of the perpetrator and eyewitnesses did not identify the plaintiff were insufficient to overcome the presumption of probable cause because police had received reports of possible multiple suspects); *Williams v. City of New York*, No. 02-cv-3693, 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003) (dismissing claim based on withholding of exculpatory evidence where "the information [did] not negate the possibility" that the plaintiff had committed the crime).

In his prayer for relief, Plaintiff asserts that he brings claims for, among other things, "failure to properly investigate." SAC at 5. Plaintiff has "no constitutional right to an adequate investigation." *Hicks*, 232 F. Supp. 3d at 495 (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008)). To the extent that Plaintiff's allegations can be read to raise an argument of bad faith based on the detectives' failure to properly investigate the charges brought against him,

those allegations are equally insufficient to overcome the presumption of probable cause.  *See Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); *Hicks*, 232 F. Supp. 3d at 493 ("[F]ailure to pursue alternative avenues of investigation or possible negligence in failing to discover or forward exculpatory evidence is insufficient to rebut the presumption created by the indictment." (internal quotation marks and citation omitted)); *see also Gisondi v. Town of Harris*, 72 N.Y.2d 280, 285-86 (Ct. App. 1988) (noting that "the police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it" and acknowledging that the New York Court of Appeals has "held that the police need not investigate every asserted alibi").

Because Plaintiff fails to plead any facts plausibly suggesting that the indictment was procured by fraud, perjury, suppression of evidence, or bad faith, the presumption of probable cause created by the indictment stands, and is sufficient by itself to defect Plaintiff's claim for malicious prosecution.

### iv.   Malice

Plaintiff also fails to allege any facts giving rise to an inference of malice on the part of Detectives Puskas and Moccia.  The fourth element of a malicious prosecution claim, malice, "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, . . . [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (omission and alteration in original) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (Ct. App. 1978)).  Generally, a lack of probable cause "creates an inference of malice."  *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).

Here, as just discussed, Plaintiff's allegations do not rebut the presumption of probable cause created by the indictment.  Therefore, no inference of malice can be presumed and Plaintiff

must plead facts that plausibly suggest that the detectives filed charges against him out of a "wrong or improper motive." *Rounseville*, 13 F.3d at 630. This Plaintiff fails to do. Although Plaintiff alleges that the detectives arrested and brought charges against him knowing that his brother was already in custody, nothing in Plaintiff's allegations suggests that the detectives filed charges against him for a motive other than to serve justice. In fact, Plaintiff alleges nothing with respect to the detectives' motivation. Therefore, Plaintiff fails to plead that Detectives Puskas and Moccia acted with malice in bringing criminal charges against him. *See Rogers v. Bisono*, No. 15-cv-6670, 2016 WL 4224072, at *3-4 (S.D.N.Y. Aug. 9, 2016) (finding insufficient allegations of malice when complaint contained no allegation regarding the defendants' motives despite allegations that one defendant made false statements about the plaintiff's actions giving rise to the criminal charges); *but see Li v. City of New York*, 246 F. Supp. 3d 578, 614-15 (E.D.N.Y. 2017) (finding sufficient allegations of malice where complaint alleged that defendants signed the criminal complaint knowing that its content was false, made a false statement under oath, and sought to use the plaintiff as a "bargaining chip" to pressure another individual to plead guilty).

\* \* \*

Accordingly, because Plaintiff's second amended complaint does not suggest facts that could rebut the presumption of probable cause produced by the indictment and is otherwise devoid of any allegation of malice in the detectives' initiation of the criminal proceedings against him, Plaintiff's malicious prosecution claim against Detectives Puskas and Moccia is dismissed.

### b. Other NYPD Defendants

Plaintiff's malicious prosecution claim against the other NYPD defendants is also dismissed. The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks omitted)). Plaintiff's only mention of the remaining individual Defendants is a reference to their presence at the time of Jesse

Blount's arrest and processing in Captain Lieber's August 1, 2012 report, Pl.'s Opp., Ex. 1.  Plaintiff

pleads nothing to suggest that these Defendants were also involved in his arrest or the handling of

his case in any way.  Because Plaintiff has only alleged the personal involvement of Detectives

Puskas and Moccia in the relevant events, Plaintiff's malicious prosecution claim with respect to the

remaining officers is dismissed.

### 2.  Due Process Claim

Plaintiff alleges that Detectives Puskas and Moccia never interrogated him after his arrest,

that no "Audio or Hand written Statements were taken from [Plaintiff] saying that he did anything

pertaining to the July 31, 2012 incident," that the detectives and D.A. Defendants filed and

prosecuted criminal charges against him despite knowing that the real culprit of the robberies at

issue was already in custody, that ADA Groppe withheld exculpatory evidence, and that former

D.A. Johnson violated Plaintiff's right under N.Y. C.P.L. § 30.30 to a speedy trial.  SAC at 3-4.  To

the extent that Plaintiff's second amended complaint can be construed to raise a due process claim,

that claim is dismissed.

For the reasons already explained, any due process claim against the D.A. Defendants is

dismissed on the grounds of absolute immunity insofar as it challenges the manner in which those

defendants prosecuted the criminal charges.

Further, any due process claim against Detectives Puskas and Moccia is time-barred.  As

Chief Judge McMahon explained in her order during the early stages of this litigation, the statute of

limitations for a section 1983 claim is found in the "general or residual [state] statute [of limitations]

for personal injury actions."  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens*

*v. Okure*, 488 U.S. 235, 249-50 (1989)).  Under New York law, the applicable limitations period is

three years.  N.Y. C.P.L.R. § 214(5).  "Federal law determines when a section 1983 cause of action

accrues, and [the Second Circuit has] ruled that accrual occurs when the plaintiff knows or has

reason to know of the injury which is the basis of his action."  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d

Cir. 2013) (quoting *Pearl*, 296 F.3d at 80)).

Plaintiff's allegations with respect to Detectives Puskas and Moccia are limited to their arrest

of Plaintiff and their handling of his case until the moment that charges were filed against him—

actions which were all confined to August 2012.  Nothing in Plaintiff's allegations suggests that he

did not know or have reason to know of any alleged due process violation until a date after August

2012.  Therefore, Plaintiff's due process claim is construed to have accrued in August 2012.  Because

Plaintiff did not commence this action until June 15, 2016, nearly a year after the three-year statute

of limitations period expired, his due process claim against Detectives Puskas and Moccia is

dismissed as out of time.[13]

Furthermore, any due process claim against the remaining NYPD Defendants is also

dismissed as Plaintiff has failed to allege any personal involvement by those defendants.  *See Victory*,

814 F.3d at 67 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.").

### 3.   Eighth Amendment Claim

Plaintiff asserts that he brings a claim under the Eighth Amendment.  SAC at 4.  Although

Plaintiff alleges that he suffered a violation of his Eighth Amendment rights, the Court construes

any such claim as a violation of Plaintiff's Fourteenth Amendment rights because he was a pretrial

detainee during the period of his detention.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A

---

[13] Although the failure to file an action within the limitations period is an affirmative defense and a plaintiff is generally not required to plead that the case is timely filed, *see Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007), dismissal is appropriate where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading, *see Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).  Here, the Court identified the facially apparent time bar with respect to claims arising from Plaintiff's August 2012 arrest in its November 10, 2016 order.  ECF No. 7.  Plaintiff was given the opportunity to amend his pleadings to address the timeliness of those claims.  *Id.*  Despite this opportunity to amend to avoid dismissal, Plaintiff's second amended complaint still fails to plead any facts to show that a due process claim against Detectives Puskas and Moccia has been brought timely.

pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.."). Plaintiff alleges that he sustained "cruel and unusual pain" and that he was detained for six days in the V.C.B.C. However, he alleges no facts regarding the conditions of his confinement and no facts alleging that Defendants acted with deliberate indifference to those conditions. *See id.* ("A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."). Moreover, any claim based on the conditions of his six-day confinement in August 2012 is time-barred for the same reasons discussed in Section III.B.2, *supra.* Therefore, Plaintiff's Eighth Amendment claim is dismissed with prejudice.

### C.  Claims Against the City of New York

Plaintiff alleges that the City of New York is vicariously liable for the acts of the D.A. Defendants and the NYPD Defendants. Plaintiff's claims against the City are dismissed.

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted).

A plaintiff may satisfy the "policy or custom" prong in one of four ways:  by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at

483–84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Here, Plaintiff fails to state a claim for municipal liability with respect to the conduct of NYPD officers because, as previously discussed, Plaintiff fails to plead a constitutional violation by those defendants. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[None] of our cases authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers . . . [i]f a person has suffered no constitutional injury . . . ."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (where "district court properly found no underlying constitutional violation," it was not necessary to consider claims of municipal liability under *Monell* ); *Levy v. Alfano*, 47 F. Supp. 2d 488, 498 (S.D.N.Y. 1999) ("It is well settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official." (citation omitted)).

Turning to the D.A. Defendants, a district attorney or assistant district attorney acting in his or her official capacity as a prosecutor is an agent of the State, and therefore immune from suit. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *see Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State . . . represents the State not the county."). Accordingly, "a district attorney's misconduct in prosecuting an individual [does] not give rise to municipal liability." *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992).

Municipal liability for a section 1983 malicious prosecution claim may lie, however, "when a county district attorney ha[s] a 'long history of negligent disciplinary practices regarding law enforcement personnel, which g[ives] rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153  n.14 (2d Cir.

1995) (quoting *Gentile v. County of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991)); *Ying Jing Gan*, 996 F.2d at 536 (If claims center "on the administration of the district attorney's office," the district attorney is "considered a municipal policymaker."). "Consequently, as long as a plaintiff's 'claims center [ ] not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office,' there can be liability against a New York county for an alleged malicious prosecution." *Pinaud*, 52 F.3d at 1154 n.14 (citing *Ying Jing Gan,* 996 F.2d at 536; *Walker,* 974 F.2d at 301; *Gentile,* 926 F.2d at 152 n.5).

Here, Plaintiff alleges at great length that former D.A. Johnson is liable for the actions of those under his supervision. Plaintiff's allegations, however, say nothing of D.A. Johnson's training practices or other administrative policies that could give rise to the City's liability, and the allegation that ADA Groppe withheld exculpatory evidence is insufficient to allege such a policy. *See Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 649 (S.D.N.Y. 2015) ("The unconstitutional conduct of a single prosecutor does not give rise to municipal liability." (citing *City of Canton v. Harris*, 489 U.S. 378, 386 (1989))); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (citing *Monell*, 436 U.S. at 694)). Moreover, all of Plaintiff's allegations relating to the D.A. Defendants are based on their prosecution of Plaintiff's individual case—actions for which the City cannot be held liable under section 1983. *Walker*, 974 F.2d at 301.

Accordingly, Plaintiff's claims against the City are dismissed.

### D.  State Law Claims

To the extent that Plaintiff's second amended complaint can be construed to raise claims under New York law for intentional infliction of emotional distress and *respondeat superior* liability, those claims are dismissed.

According to the second amended complaint, each of the parties to this action is domiciled in New York. SAC at 2-3. Although Plaintiff is currently incarcerated, before his incarceration, he was a resident of the Bronx. SAC at 3. Therefore, it appears on the face of the second amended complaint that Plaintiff was at all relevant times a citizen of New York. Because the parties are non-diverse, Plaintiff's state law claims are before the Court as a matter of supplemental jurisdiction. Federal district courts have supplemental jurisdiction over state law claims "that are so related to" federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Such jurisdiction, however, is "discretionary," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c).

Because the Court has dismissed all of Plaintiff's federal claims over which the Court has original jurisdiction, it declines to exercise supplemental jurisdiction over any pendent state claims. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))). Accordingly, any claims under New York law for intentional infliction of emotional distress and *respondeat superior* liability are dismissed.

## IV.   LEAVE TO AMEND

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court grants Plaintiff leave to amend the complaint, solely with respect to those claims that were

dismissed without prejudice, to correct the deficiencies identified in this opinion.  Any amended complaint must be filed no later than 30 days after the date of this order.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety:

All of Plaintiff's claims against the D.A. Defendants are dismissed with prejudice to the extent they are based on those defendants' prosecutorial functions, *i.e.* the decision to prosecute Plaintiff, the presentation or withholding of evidence in grand jury and court proceedings, and any speedy trial violations.

Plaintiff's malicious prosecution claim against the NYPD Defendants is dismissed without prejudice.

Plaintiff's due process claim against the NYPD Defendants is dismissed without prejudice.

Plaintiff's Eighth Amendment claim against the NYPD Defendants is dismissed with prejudice.

Plaintiff's *Monell* claim against the City of New York is dismissed without prejudice.

Plaintiff's state law claims against the NYPD Defendants and the City of New York for intentional infliction of emotional distress and *respondeat superior* liability are dismissed without prejudice.

Plaintiff is granted leave to replead those claims that have been dismissed without prejudice no later than 30 days following the date of this order.  If Plaintiff fails to file a third amended complaint within 30 days, this action will be dismissed and judgment will enter.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the

Southern and Eastern Districts of New York 7.2.

      The Clerk of Court is directed to terminate the motion pending at ECF No. 56 and to mail a copy of this order to Plaintiff by certified mail.

      SO ORDERED.

Dated:  November 21, 2017
New York, New York

                            GREGORY H. WOODS
                     United States District Judge